Good morning. Good morning, Your Honors. And may it please the Court. David Zimmer on behalf of Petitioner Crain Walnut Shelling, and I'm going to try to reserve three minutes for rebuttal, but I'll watch the clock. All right. Thank you. I'm here today, both with co-counsel as well as Mr. Crain, who traveled here from San Francisco for the hearing. Your Honors, the PSLRA was intended to avoid complex lead plaintiff fights by establishing that the lead plaintiff in a securities class action will be the plaintiff with the largest financial loss unless another lead plaintiff submits proof, and that's the key word, proof that the presumptive lead plaintiff is not adequate under Rule 23. Now, in Kavanaugh and Mershaw, this Court granted mandamus relief where the District Court sought to expand its role in selecting the lead plaintiff beyond what the PSLRA permits. And the District Court here did exactly the same thing. It held the District Court's- Well, but just a minute. This is not a Kavanaugh reason. I mean, the Kavanaugh reason was they'd entered into a comparatively less advantageous fee arrangement, and we said that's not enough. In the Mershaw reason, we said the misgivings about the presumptive lead plaintiff's ability to control the litigation without undue influence was not enough. We have a different situation here in this particular situation. The District Court said, hey, there's two times where this presumptive plaintiff has not done what needed to be done based on the discovery and based on what had happened. And they said, based on the fact they didn't do what they were supposed to be done, there is- they've sufficiently rebutted. And now we're trying to determine if that's clear error. Right. And so there are two parts. Let me unpack that, right? So there's sort of the legal standard of proof that the District Court applied, and then there's sort of what the District Court relied on. And I- I mean, to be fair, in the supporting declaration, Mr. Walnut's opening statement, he claims to be the sole investor, and then when they got all the way through, his trust owned it. They thought that- the District Court said, I don't know what to do with this. Then he went for a deposition. They asked him to require- if he could require- produce his financial records, and he said he wouldn't produce them. And the District Court said, that's not enough. I can't- I can't feel comfortable about this presumptive plaintiff based on having these two things happen. And now I'm not going to let that- I'm going to go with somebody else because I can't feel comfortable about it. Right. And that- respectfully, Your Honor, that's exactly the kind of- this I can't feel comfortable is exactly the misgivings- Well, but the honest truth is, now we're talking about what evidence he needed in order to get comfortable. And that's what the case is about in my book. But the honest truth is, this is not a Kavanaugh reason. This is not a Mershaw reason. This is a reason particularly to this case and what this particular plaintiff did or did not do or would or would not do. Well, respectfully, Your Honor, I think that this genuine and serious doubt that the District Court applied basically is Mershaw. It basically is misgivings, right? Well, I guess I'm trying to figure out the misgivings did not in Mershaw have the concrete basis for such a thing as they do in this particular case. Well, so again, I think it's important to separate the two things because at the point the District Court got to preponderance, which I think under clear Supreme Court precedent is the standard that applies here. If you look at EMD Sales v. Carrera, this genuine and serious- we haven't found a single case, the parties haven't cited one, in the history of civil litigation where the word proof was intended to mean something less than a preponderance of the evidence. Well, and the District Court here said, I found it on this, but even if it's preponderance of the evidence, I find the same. So I want to talk about that because what the District Court said, and the District Court went out of its way on pages 35 and 36 to say that the initial filing inaccuracies were a mistake and that actually they wouldn't on their own rise to the level of preponderance. And the only thing the District Court relied on was this idea that Mr. Crane had testified that he would violate a court order. And that is just not what Mr. Crane said. And you can- I think that this is a case where you can look at- Well, but frankly, that's your argument about what happened. And others will make the other argument. And the District Court was stuck with trying to determine that argument and said that's enough. Well, right. But clear error is not abdication, Your Honor. Well, he didn't abdicate. No, no. I'm saying what this court is reviewing with the District Court. I understand what you're reviewing. So you can look at pages 405 and 406 of- I mean, the District Court's entire analysis rested on a single answer to a single question, which you can read just like it's from a deposition. It's on 405 to 406. And the District Court concluded from this that Mr. Crane had testified that he would violate a court order. The question says nothing about a court order. And if you look at it in the context, they're talking about the back and forth between two parties during discovery. I mean, there are basically two questions. The first is, and this is on 405, does CWS, the entity, have possession, custody, or control over your personal financial records? He says no. The next question is if CWS is required to produce your personal financial records, which he had just testified CWS didn't even have possession, custody, or control over, would you produce them? He says no. And, again, there's nothing about a court order. I mean, you can read it. The District Court just read this in. I mean, I think the difficulty is we're here on an extraordinary writ of mandamus. And one of the factors under Bauman is, you know, whether the court was clearly erroneous as a matter of law. And so your first pitch was, well, he applied a clearly erroneous legal standard, even though there's no case law that interprets this, you know, what it means to have, sorry, what's the language?  Proof.   But even in the alternative, applying a preponderance-redeeming standard, you might be right, but why does that reach something to grant an extraordinary writ? Well, I think that what this court recognized, and Merschow in particular, is that it is important that District Courts have a tendency to try to take control over this beyond what the, they want to select who they want to select, and they don't like the fact that the statute requires, you know, holds them, says that there's a strong presumption and behavior. I think that's right, but they have to make factual findings that withstand the clear error standard, and that's what we're looking at on appeal, and the District Court clearly did so. I'm looking at 3536, which you had discussed earlier with Judge Smith, and the court acknowledged, hey, if I were to apply the preponderance standard, the analysis is slightly different. It takes more than the discovery issue to be disqualifying, and then it discusses Mr. Crane's testimony and says, here, Mr. Crane's testimony is so striking that the court finds it clears the preponderance bar on its own, even if it did not, his testimony certainly clears the preponderance bar in combination with Crane-Walnut's filing inaccuracies, and then it went on to say, paired with discovery issues, the inaccuracies demonstrate inadequacy by preponderance of the evidence, so to me, all those read as factual findings, and now we're saying, well, is this supported by the record, and it is, precisely the portions at 405, 406 of his deposition testimony that you referenced, I can't say that the court clearly erred, can I, in evaluating the import of his refusal to produce personal records? Well, he did, so I actually want to, this is a key point, because this is, if you look at what actually happened here, is that Mr. Crane actually did produce these records, and I think that's crucial context here, which is that Mr. Crane was subjected to possibly more discovery than any presumptive lead plaintiff in the history of this statute, I mean, we're not aware of any case where there's been this much discovery, he produced almost 1,000 pages of records, including sensitive financial records, he sat for a six-hour deposition, he traveled to attend court hearings, when at the last court hearing, the court asked for more personal financial records, a trust agreement, a margin agreement, he agreed voluntarily to produce those agreements, the district court recognized that there were no actual significant discovery issues here, this was all resting on this hypothetical question that is extremely unclear, that says nothing about a court order, I mean, again, I think that you have to understand this, if you look at the context of the previous question, he had just testified that the entity, CWS, didn't even have his personal financial records, and then he's being asked if the entity is being, is required to produce financial records that he had just testified, the entity doesn't even have, would you produce them, I mean, respectfully, your honor, the question doesn't make any sense, I mean, he had just. But the court didn't rely solely on the testimony. It did, actually. It was also, in addition to the context of inaccurate filings about ownership status and other, you know, there were a number of stumbles along the way that figured into the district court's analysis. Well, there were two, at the end of the day, the district court rejected almost all of the objections that Universal made, except these filing inaccuracies from the very beginning of the case, and then this testimony, right? And it specifically says, in applying the preponderance standard, that the filing inaccuracies were harmless and wouldn't be enough to clear that bar on their own. If it were a loan. If it were a loan.  And so. Coupled with the other. But the other, the other is its understanding that Mr. Crane had testified that he would violate a court order, and he never gave that testimony. Well, I think you're just. That's why I went right to the district court's analysis, but you're you're asking us to sort of reweigh and second guess the district court's findings, because the district court, essentially, you're trying to walk back his testimony. The district court acknowledged that and explain why it wasn't persuaded. And so it has to be completely illogical for us to overturn those factual findings, right? Well, yes, it does have to be completely illogical, but we're not trying to walk back. It has to be clearly erroneous. Clearly erroneous. Which might be even more than that. Well, no, this court has said a lot of cases, but I'm just saying if I'm a district court and I have to have a clearly erroneous, that's pretty big. Yeah. Illogical and implausible is how this court has described it. But honestly, Your Honor, I think the reading, especially in context, this testimony on pages 405 and 406 as being testimony that Mr. Crane would not violate a court order is about as I hate to say it, but it's about as illogical and implausible as it gets. He just didn't say that. And he then submitted a sworn declaration that clarified what he meant on pages 126 and 127. And I just think that in the context of somebody... The court overruled those objections, though. I'm not saying objections. He submitted a declaration, a sworn declaration on pages 126 and 127, where he explained that, of course, he would comply with court orders, that this question said nothing about a court order, and that he understood it in the context of an actual court order that had just been issued that said he did not need to produce these exact documents. And I think if you look at the question, you look at the context in which the question was asked, and you look at Mr. Crane's conduct throughout this litigation, respectfully, the idea that Mr. Crane, that there's any basis in this record to think that Mr. Crane would not comply with a court order, it's about as illogical and as implausible as any fact finding I have seen. I mean, with all due respect to the district court here, he just read into this testimony, this idea that we're talking about a court order, even though it isn't there. It's just not present. And so, yes, I completely agree that the standard is high on clear error. But clear error requires deference, not abdication. And I think for this court, if you look at pages 405 and 406, it just doesn't say what the district court read it to say, especially in context of the previous question, in which the question was whether the entity had possession, custody, or control over those records. He said no. And then counsel's asking, well, would the entity produce these records that it doesn't even have? Let me ask you another question, which gets us off one you're pounding on us to understand, which I'm not sure I agree with, but I can hear it. So if we agree with the district court that Universal showed Walnut's inadequacy by a preponderance of the evidence, then that lack of clear error, is that dispositive of this motion? Well, yes. If I understand the question, then I think it would be, because if they, if the district You'd say, well, I thought so, too. If we really say there's no clear error, then there wouldn't be any mandamus petition, right? The petition would be denied. Yeah. I mean, look, we think that the other Bowman factors wouldn't come into effect to make your argument. That's what I'm trying. Correct. I think without clear error as to the legal standard and the application and preponderance, we wouldn't be, obviously. But yeah, that's a necessary factor. I'm going to save the rest of my time. Yeah. Thank you very much. Good morning, Your Honors. May it please the court. John Rizzio Hamilton of Bernstein, Lenowitz, Berger, and Grossman for the lead plaintiff,  Fundamentally, this petition boils down to the assertion that it is clearly erroneous as a matter of law for a district court to find a lead plaintiff movement inadequate because it repeatedly filed inaccurate certifications and declarations and because it testified that it would not produce information that it was required to produce. That assertion is incorrect. The exceptionally high bar for Matt Davis... What do we do with this idea that if you read what really happened at the time of when he was giving this testimony, it really doesn't say that he won't do it? That was the argument.  Yeah. A few responses to that. So first of all, I think that it's actually quite clear that that's what he says. He's directly asked if he would provide his personal financial records if required to do so. And he says no. To our reading and to the district court's reading, there's nothing ambiguous about that. And certainly within the context of a petition for Matt Davis, a district court is within its discretion to take the language facially for what it says. Right. You read that alone. Then I think it's fairly clear. But I think what counsel's trying to get at is to try to have us read the two or three questions before that, which is, does Crane-Walnut have possession, custody, control of your personal financial records? No. And then the next question, then, if Crane-Walnut is required to produce your financial records, your personal ones, will you produce them? No. So what do we do with that? I know the district court looked at that. It characterized it as Mr. Crane walking back on the significance of that testimony. It overruled the evidentiary objections on vagueness grounds and the other grounds. And then it said, okay, that was a straightforward answer. But the question was really directed towards the entity Crane-Walnut. Yeah. And the question assumes that even if Crane-Walnut doesn't have possession, right, if there's a requirement at some point in the case that your personal financial records nevertheless be produced, would you agree to do that? Would you do that? And he just says no. And that's a pretty flat answer. And I will say this. He put in a declaration after the fact trying to walk this back, as the district court rightly noted. And they put a lot of weight on this declaration. But I'd like to talk about it for a moment because there's a lot of things about this declaration that the district court was fully within its discretion to find not plausible. First of all, it was terribly belated, this declaration. It came some five months after the testimony was given. He was deposed in early February. And he doesn't submit this declaration purporting to clarify what he meant until early July when he first moves for reconsideration. Interestingly, within that five-month time period, he had multiple opportunities to clarify. And one would have thought that if the testimony was vague and had a different meaning than it facially reflected, he would have done so. He didn't clarify that at the deposition itself. February 20th, both parties submit supplemental briefing to the district court. Universal points out the testimony and how problematic it is. He doesn't say a word about it then to clarify or otherwise. March 6th, there's a lead plaintiff hearing before the district court where the testimony again was at issue. He doesn't say a word about it there to clarify or otherwise. March 28th, there's a second round of supplemental briefing where the testimony is again front and center. He doesn't say boo about it to clarify or otherwise. And it's not until July when he submits this declaration seeking to walk the testimony back. That's big picture point one. The declaration was terribly belated. Big picture point two, the declaration does not really say what they claim it says. If you look at paragraph five of the declaration. The other record site. Addendum 127. Yeah. He doesn't say he misunderstood the question. He says he may have misunderstood the question, quote unquote. That's qualified and ambiguous language. And paragraph eight of the declaration. Again, at addendum paragraph page 127. He doesn't make some, you know, big statement that he's going to appropriately and proactively fulfill his discovery obligations. What he says is that he'll comply only with, quote, final non-appealable orders. So when you put in a declaration that is both highly qualified and ambiguous itself, using the word may, that kind of declaration raises more questions than it answers. And moreover, the explanation that they are proffering on the back of this declaration does not make any sense. The whole argument they're making is that the first thing they say in one breath is that Mr. Crane could not have interpreted the word required in the question to refer to a court order. In the very next breath, they say that actually the way he interpreted the declaration was to specifically refer to the magistrate judge's prior discovery order. He can't have it both ways. That argument is hopelessly at odds with itself, as the district court rightly commented, for all these reasons. The belated nature of the declaration, its highly qualified and ambiguous assertions, and the fact that the argument they make based upon it is at odds with itself. The district court was well within its discretion to discount that declaration and take the testimony at face value. And it wasn't just the testimony. It was repeated filing inaccuracies. That was part of the equation under either standard that the district court applied. Repeatedly, Mr. Crane made misstatements, even through inadvertence, but they were misstatements nevertheless about the ownership structure of the lead plaintiff moving. That matters a great deal in securities class action litigation because the ownership structure of the lead plaintiff moving gives information to absent class members and the defense about who's making the litigation decisions in the case and what their financial interest is in the matter. Absent class members are entitled to know that. Defendants are entitled to know that so they can seek discovery about it. And repeatedly making misstatements about something like that that is important in the securities class action context is perfectly sufficient evidence for a finding of inadequacy. And it wasn't just the statements about the chain of ownership, which were repeated, by But it's the local rule 315 certification that misstated flatly the fact that there were other entities with a financial interest in the litigation. That's important for the very same reason. And remarkably, when this inaccuracy was called to Mr. Crane's attention, he didn't correct it. He actually just let the inaccurate certification remain in the record. And instead he dismissed its importance. And as the district court rightly reasoned, that's not his prerogative. It's his job as a lead plaintiff movement to be accurate in representing the ownership structure behind the movement precisely because it gives absent class members and litigants important information. Now, much has been made about the selection of the standard. I think the big picture point here is that it doesn't change the outcome. But I do want to spend one moment talking about it just because the selection of the standard provides no basis for mandamus review, really for four reasons. First of all, Judge Davila took the genuine and serious doubt standard directly, literally, verbatim from this court's two opinions in Kavanaugh and Murcho. It cannot possibly be that a writ of mandamus lies where a district court quotes the prior opinions of its own circuit court. Second, since the passage of the PSLRA in 1995, there is no case, not a single one, that has ever held that the preponderance standard applies in this context. Again, it cannot be that a writ of mandamus lies simply because a district court refused to break new ground and do something unprecedented. And this court's precedents say exactly that in the In Re High Country paving case and the In Re Swift case. Third. Well, but is there really any reason that the preponderance of the evidence standard is not appropriate in the context of the PSLRA? Yes, Your Honor. When? That brings me to my third point. So when the statute is silent on the standard, as the PSLRA plea plaintiff provisions are here, it's up to the court to select one. And the court's analysis in selecting one looks to where it makes the most sense to allocate the risk of error and what the relative weighing of the rights at issue are. And I have to say, I was really, really persuaded by Judge Davila's analysis on this at pages 5 to 6 of the addendum. He started off by noting that the right at issue for the lead plaintiff movement is somewhat limited. It's only the ability to lead the class action. It's not the ability to be a member of the class and to recover through the class action. In fact, as he rightly said, there's no substantive right affected because in all events, whether the movement is appointed or not, the movement can still do two things. It can opt out if it wants and control its own individual case. Or it can remain a member of the class and share in any recovery according to its pro rate of share of the damages. So its rights are limited. However, let me stop you just a little bit. In Olean wholesale. Yeah. We said that the balance of interest supplying preponderance of the evidence in the context of Rule 23. Is Rule 23 does not change the plane of separate entitlements to relief, nor a bridge, the defendant's rights, and instead alters only how the claims are processed. Now, it seems to me, based on the PSLRA, that that would say we have a preponderance of the evidence standard. So that's not necessarily true, Your Honor. And why? The reason is because there's a there's a substantial difference between class certification, the lead plaintiff appointment phases with respect to the rights at issue and the consequences of those decisions. This court recognizes much in Bridgestone. But before I touch on Bridgestone, the fact of the matter is that the class certification stage is a major inflection point in these cases. The lead plaintiff appointment phase is not if class certification is granted. And this court and virtually every circuit court around the country within the context of its Rule 23 F interlocutory appeal, jurisprudence has repeatedly held that class certification is an inflection point. And if it's granted, it exerts substantial pressure on a defendant to settle litigation. When you're dealing with those kinds of stakes, it makes good sense to require a plaintiff to prove its its right to certification by a preponderance of the evidence. By contrast, in the lead plaintiff phase, the lead plaintiff movements rights to control the litigation are limited. But the classes, the consequences for the class of who is selected are really significant because this is their only shot at a recovery. And a potentially inadequate lead plaintiff can impose great costs and delay on them or even worse, compromise the merits of the case. So as Judge Davila reasoned within that context, it makes total sense that the lead plaintiff appointment phase to select a standard that is marginally more protective of the class than it is of the lead plaintiff movement. And he further said, and I agree wholeheartedly with this, that it actually accords better with the language of the statute because the umbrella command. And do I have to reach this issue really in this particular case? I mean, because I'm not sure I agree with you. And so I'm trying to say, do I really have to reach that issue? Because it seems to me that he said under either standard, it's the same. So it's so that kind of throws the issue out. I agree completely. And that was you know, that was our main point in our in our briefing. It is it does not alter the outcome of this petition. So I think he's quite right under either standard. And I think more to the point for this petition, there's no clear error as a matter of law under either standard. And so you don't need to reach the question and you can just deny the petition, irrespective of which standard applies. I suppose maybe the last thing I would say is that, you know, Mershaw and Kavanaugh are totally in opposite here. In both cases, in slightly different ways, the district court completely jettisoned the PSLRA's procedures. In this case, Judge Davila very carefully adhered to those procedures. It took him a year to faithfully adhere to the sequential three step process to sort through the discovery, to give Mr. Crane an opportunity to move for reconsideration and to carefully consider that and even apply the standard that he was asking for on reconsideration. That's a far, far cry from what happened in Mershaw and Kavanaugh. With that, I would just open it up and ask if if anyone has any other questions for me. I'm happy to see the balance of my time, if not. Thank you very much, counsel. Thank you. I just want to make three quick points on the standard. I just encourage this court to read EMD sales v. Carrera, which is a Supreme Court decision from last term. And I think it is basically dispositive that preponderance applies here and that there is no freewheeling inquiry that district courts can just make up whatever standard or proof they want. I think that's pretty clear cut. And I think it's telling that even though we cited that case about 20 times, they didn't even cite it in their brief and they didn't reference it here today. On the filing, on the filing inaccuracies, you know, counsel said that they mattered a great deal. The district court said the opposite. The district court said that these were largely immaterial, had no bearing on its consideration, that it was an honest mistake and specifically concluded that under the preponderance standard, they would not on their own rise to the level of meeting that standard. So it really does come down to whether there is clear error in the district court's conclusion that Mr. Crane would violate a court order. And, again, they sort of made it seem like we're relying primarily on the declaration to walk back the testimony. That isn't true. What we're relying on is the testimony, which says nothing about a court order. And when you read it in context, actually it makes it very clear that we're talking about the back and forth of discovery between parties, that there was no reason to think that Mr. Crane would have thought that a court order was involved in this at all. And just to put a point on that, counsel could have asked Mr. Crane, if the court ordered you to produce these documents, would you produce them? And we wouldn't be here today if they had asked that question because Mr. Crane would have said, as he did in his declaration, of course if there was a court order to produce certain documents, I would produce them. But counsel didn't ask that. And the fact that it was belated in submitting the declaration is because until the district court's decision, it never occurred to us, and honestly I'm not even sure it occurred to them, that anyone would read this testimony the way the district court did. It never occurred to us that someone would read this testimony as being that he wouldn't comply with a court order. It was only after we realized that the district court had read it that way that we had the opportunity to correct it. So I'd urge the court to look at what Mr. Crane actually said here and grant the petition. Thank you very much. All right, thank you very much to all counsel for your arguments this morning. The matter is submitted, and that concludes the argument calendar for today. We'll be in recess until 9 a.m. tomorrow.
judges: SMITH, NGUYEN, SANCHEZ